SECOND DIVISION
ANDREWS, P. J.
MILLER AND BRANCH, JJ.

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 21, 2015**

# In the Court of Appeals of Georgia

A15A0891. ROACH v. BREEDEN.

MILLER, Judge.

Brittany Breeden filed a petition to establish paternity and legitimation and to obtain sole custody of her minor child, I. R. Curtis Roach, I. R.'s father, moved to dismiss the petition and to enforce a Tennessee custody order. The trial court denied Roach's motion, and thereafter legitimated I. R. and granted sole physical custody to Breeden. On appeal, Roach contends that the trial court erred in denying his motion to dismiss Breeden's petition and to enforce the Tennessee custody determination because Tennessee had exclusive, continuing jurisdiction over custody matters. We agree and reverse.

The record[1] shows that in September 2013, the Juvenile Court of Knox County, Tennessee (the "Tennessee Juvenile Court") entered an order accepting a parenting plan agreed to by Breeden and Roach. The order provides that I. R. would primarily reside with Breeden, and Roach would have custody of the child every other week. The order also provides that each parent is authorized to make day-to-day decisions affecting the child while the child is residing with that parent, Roach and Breeden have joint decision-making power regarding non-emergency health care for the child, and Breeden is authorized to make decisions about the child's education.

In April 2014, Breeden filed a petition for contempt of court in the Tennessee Juvenile Court, alleging that Roach violated the parenting agreement by refusing to return I. R. to her care after Roach's designated week, and asking the court to order Roach to return the child to her. In her petition, Breeden admitted that she and Roach had joint custody of I. R.

---

[1] Breeden did not file a responsive brief in this appeal. Accordingly, Breeden is deemed to have admitted the statement of facts as set out by Roach in his brief, to the extent that statement of facts is supported by the record. See, e.g., *Payless Car Rental System, Inc. v. Elkik*, 306 Ga. App. 389, 390, n.4 (702 SE2d 697) (2010); see also Court of Appeals Rule 25 (b) (1).

By this time, Breeden was living in Georgia. Two weeks after filing her petition for contempt, Breeden filed the instant petition in the Superior Court of Walker County.

The Tennessee Juvenile Court ordered an expedited hearing to address Breeden's petition for contempt, but did not reach the merits of Breeden's petition because she was unable to attend.[2] The Tennessee Juvenile Court did, however, hear evidence that Breeden did not abide by the co-parenting plan, and that Roach had reported Breeden to the Tennessee Department of Children's Services ("Tennessee DCS") based on a concern that Breeden was not providing I .R. with necessary medical care. Consequently, in May 2014, the Tennessee Juvenile Court issued an "Expanded Order Asserting Protective Jurisdiction and Order of Continuance," (the "Expanded Order") asserting protective jurisdiction over I. R. to address risks of harm raised by Breeden's petition for contempt and by the Tennessee DCS reports, and ordering Breeden to return the child to Roach for resumption of the co-parenting plan.

Thereafter, Roach filed a motion to dismiss Breeden's instant petition, arguing that the Georgia trial court had jurisdiction to enforce, but not modify, the Tennessee

---

[2] Breeden was hospitalized at the time, as she had recently given birth to her second child.

custody order. Roach also requested that the trial court enforce the Tennessee custody order directing the county sherif to assist Roach in obtaining physical custody of I. R.

The trial court denied Roach's motion to dismiss and motion to enforce, concluding that Roach did not have standing to challenge a custody determination as to the child because the child had not been legitimated and Roach's paternity had not been established. The trial court also found that Georgia was the more appropriate and convenient forum to try the issues in the case. Thereafter, the trial court held a hearing on Breeden's petition, and entered an order legitimating I. R. and granting Breeden sole custody of the child. This appeal ensued.

On appeal, Roach contends that the trial court erred in addressing the merits of Breeden's petition and granting her sole custody because the Tennessee Juvenile Court had continuing and exclusive jurisdiction over custody because it made the initial custody determination and took no action to relinquish its jurisdiction. We agree.

The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") was promulgated to address

problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties when multiple states are involved.

(Punctuation and footnote omitted.) *Delgado v. Combs*, 314 Ga. App. 419, 424 (724 SE2d 436) (2012). Georgia adopted its version of the UCCJEA, OCGA § 19-9-40 et seq., replacing our State's prior child custody act,

because, in application, imprecision in the prior act's language often allowed for the existence of concurrent jurisdiction over custody matters in multiple states, thereby fostering competition among jurisdictions and forum shopping by the parties. The UCCJEA now remedies these earlier unintended problems by establishing continuing jurisdiction in the state in which the original custody decree was entered.

(Punctuation and footnote omitted.) *Hall v. Wellborn*, 295 Ga. App. 884, 885 (673 SE2d 341) (2009). Tennessee has also adopted the UCCJEA. See TCA § 36-6-201 et seq.; *Staats v. McKinnon*, 206 SW3d 532, 538 (I) (Tenn. Ct. App. 2006). In applying and construing the UCCJEA, we must consider "the need to promote uniformity of the law with respect to its subject matter among states that enact it." OCGA § 19-9-101.

Under both Georgia's and Tennessee's versions of the UCCJEA, a "child custody determination" is defined as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a

5

child[,]" and the term includes a "permanent, temporary, initial, and modification order." See OCGA § 19-9-41 (3); TCA § 36-6-205 (3). The term "initial determination" is defined as "the first child custody determination concerning a particular child." See OCGA § 19-9-41 (8); TCA § 36-6-205 (8).

Under the UCCJEA, a court of this State may not modify a child-custody determination made by a court in another state unless

> a court of this state has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection (a) of Code Section 19-9-61 *and* [1] the court of the other state determines it no longer has exclusive, continuing jurisdiction under Code Section 19-9-62 or that a court of this state would be a more convenient forum under Code Section 19-9-67; *or* [2] a court of this state or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.

(Punctuation omitted.) *Delgado*, supra, 314 Ga. App. at 426 (1); see also OCGA § 19-9-63.

As a preliminary matter, there is no question that the Tennessee Juvenile Court order adopting Roach's and Breeden's parenting plan was an initial custody determination.[3] Notably, the parenting plan designates Breeden as the primary

---

[3] The fact that the Tennessee order did not, in itself, legitimate the child or establish paternity is of no moment. Breeden conceded that Roach was the biological father of I. R., and Breeden and Roach both signed a voluntary acknowledgement of paternity. These actions established that Roach was the legal father under Tennessee

residential parent, provides that the child is to reside with Roach every other week, and details a specific holiday visitation schedule. The parenting plan also provides that the parties share certain legal rights with respect to the child. Moreover, Breeden conceded in her filings before the trial court that she and Roach had joint physical custody of I. R. Since the definition of a "child custody determination" includes an "order of the court providing for the legal custody, physical custody, or visitation" of the child, the Tennessee order adopting the parties' parenting plan was the initial custody determination for purposes of the UCCJEA. See *Armbrister v. Armbrister*, 414 SW3d 685, 695-696 (III) (A), 703 (III) (B) (ii) (Tenn. 2013) (noting that the designation of a "primary residential parent" is the equivalent to a custody determination); *Pippin v. Pippin*, 277 SW3d 398, 407 (Tenn. Ct. App. 2008) (same).

Given that the Tennessee Juvenile Court made an initial custody determination, we must next determine whether the Georgia trial court had jurisdiction to modify that Tennessee custody determination. We conclude that it did not.

Even assuming arguendo that the trial court would have jurisdiction to make an initial custody determination under OCGA § 19-9-61, the other conditions of OCGA § 19-9-63 were not fulfilled in order to confer jurisdiction to the trial court to

law. See TCA §§ 24-7-113 (a); 36-1-102 (28) (A) (iv).

7

modify the initial custody determination. First, there is no record evidence that the Tennessee Juvenile Court ever determined that it no longer had exclusive, continuing jurisdiction. OCGA § 19-9-63 (1). Second, while the trial court concluded that it was the more appropriate and convenient forum to try the issues in this case, "OCGA § 19-9-63 (1) specifies that the out-of-state court must make this determination, not Georgia, and [Tennessee] has never made such a determination." (Footnotes omitted.) *Delgado*, supra, 314 Ga. App. at 427 (1). Finally, there has been no finding either by the Tennessee court or by the trial court that "neither the child nor the child's parents or any person acting as parent resides in [Tennessee]." OCGA § 19-9-63 (2). Indeed, it is undisputed that Roach still lives in Tennessee, and the child is supposed to live with Roach on alternate weeks.

Therefore, since the Tennessee Juvenile Court retains exclusive, continuing jurisdiction in this matter, the trial court lacked jurisdiction to modify the initial Tennessee custody order. Accordingly, we reverse the trial's orders denying Roach's motion to dismiss and granting Breeden's legitimation petition.

*Judgment reversed. Andrews, P. J., and Branch, J., concur.*