**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

**May 12, 2026**

# In the Court of Appeals of Georgia

A26A0676. ROBINSON v. LONDON.

DAVIS, Judge.

In this child custody dispute, Tashika Robinson, pro se, appeals from the trial court's order dismissing her "petition to domesticate and register custody and child support and modification of visitation and child support, and citation for contempt of court." On appeal, Robinson argues that the trial court erred by (1) dismissing her petition on the basis of res judicata; (2) determining that Georgia was not the child's home state under the Uniform Child Custody and Jurisdiction and Enforcement Act ("UCCJEA"); (3) dismissing her child support claims under the Uniform Interstate Family Support Act ("UIFSA"); (4) failing to initiate mandatory interstate communication with Maryland before determining that Georgia lacked jurisdiction;

(5) adopting Darrell London's "counterclaim language verbatim and disregarding uncontroverted evidence and testimony" which confirmed that Georgia was the proper forum; and (6) awarding London attorney fees without proper statutory or factual justification.[1] For the reasons that follow, we affirm the trial court's order dismissing Robinson's petition.

The record shows that Robinson and London are the parents of a minor child who was born in 2018.[2] Robinson and the child have lived in Rockdale County, Georgia since 2020, and London resides in Owings Mills, Maryland.[3] In July 2021, the Circuit Court for Baltimore City in Maryland entered an order awarding Robinson sole legal custody and primary physical custody of the child, and it established a parenting time schedule for London to visit with the child. The court also ordered London to pay $990 monthly in child support. Robinson later petitioned for a modification in custody and child support, and in March 2024, the Circuit Court for Baltimore City entered an order granting Robinson's petition in part and denying it

---

[1] London did not file a responsive brief in this appeal.

[2] Robinson and London were never married.

[3] London asserted below that he has always lived in the state of Maryland.

in part. Specifically, the court ruled that Robinson would retain primary physical custody of the child but that the parties would have joint legal custody of the child.[4] Robinson again petitioned the Maryland tribunal to modify child support, and on February 20, 2025, the tribunal granted her petition and increased London's monthly child support obligations to $1,319.00.

In March 2025, Robinson filed a pro se "verified petition to domesticate and register custody and child support order and modification of visitation and child support, and citation for willful contempt of court" in the Superior Court of Rockdale County. In her petition, Robinson requested that the court modify the Maryland court's March 2024 visitation and parenting order and the February 2025 order. She alleged that modification of the orders was warranted because the Maryland tribunal failed to account for the academic calendar of the child's school, which she alleged impacted the child's ability to spend "meaningful" time with her maternal family during holidays, and that London generated substantial income from a business that he owns and operates. Robinson also asserted a claim for contempt based on London's failure to comply with the Maryland court's orders requiring him to secure health

---

[4] The court did not modify London's child support obligations.

insurance coverage for the child. London responded to the petition and argued that the court lacked personal jurisdiction over him and that the Maryland court had exclusive continuing jurisdiction over the matter. He also counterclaimed for attorney fees and expenses under OCGA § 9-15-14(a) and (b). London simultaneously filed a motion to dismiss, wherein he raised the same claims that were raised in his answer and also argued that Robinson's action was barred by res judicata.

Following a June 10, 2025 hearing, the trial court granted London's motion to dismiss Robinson's petition.[5] The trial court first concluded that it lacked jurisdiction under the UIFSA to modify the amount of child support because London resides in Maryland and did not file a consent in the Maryland tribunal authorizing a Georgia tribunal to modify the support order. The trial court alternatively concluded that Robinson's action was barred by res judicata because Robinson merely sought to relitigate the issue of London's income. Secondly, the trial court determined that it lacked jurisdiction under the UCCJEA because London resides in Maryland and because the Maryland tribunal has not determined that it no longer has exclusive continuing jurisdiction or that Georgia would be a more convenient forum.

---

[5] The transcript of the hearing is not included in the record on appeal.

Alternatively, the trial court concluded that Robinson was not entitled to relief because it had not been more than two years since the March 2024 order and because Robinson did not assert a material change in conditions to warrant relief. The court further concluded that, because it lacked jurisdiction, it could not adjudicate Robinson's claim for contempt based upon London's failure to comply with the Maryland orders.

The trial court also awarded London $4,441.50 in attorney fees under OCGA § 9-15-14(a) and (b). In awarding attorney fees, the trial court stated the following in its order:

> [T]he Court finds that the claims asserted in the Petitioner's [p]etition show such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claims. Additionally, the [c]ourt finds that the Petitioner's claims lacked substantial justification. The Petitioner's claims are wholly without merit and were initiated despite recent orders resolving the exact same matter. This [c]ourt was without jurisdiction under both the UCCJEA and the UIFSA. Additionally, there was no material change in circumstance, no change in the incomes of either party, no change in the child's needs, and no other allegations of changes which would impact the child's [well-being]. Petitioner's current pleadings simply reference and restate facts previously argued at trial in Maryland and acknowledged that these matters had already been presented to and ruled on by the [c]ourt in

5

Maryland. This action appeared to be driven solely by Petitioner's dissatisfaction with the outcome of a prior hearing, not by any legal basis or material change in the circumstance affecting the parties or the minor child. This [p]etition was solely an attempt to forum shop to obtain a different result than Petitioner obtained in Maryland. Such conduct unnecessarily expanded the proceedings between the Parties.

The trial court further noted that London's counsel "submitted sufficient evidence to the [c]ourt sufficient to show the hours she spent defending th[e] case, her billing rate, the reasonableness of such fees based on her training and experience, and the actual costs incurred."[6] This appeal followed.

1. First, Robinson argues that the trial court erred by determining it lacked jurisdiction under the UIFSA because London has sufficient minimum contacts with Georgia which authorized the trial court to exercise jurisdiction over the matter.[7] We disagree.

---

[6] London's counsel submitted an affidavit attesting to her background, her hourly fee, her paralegal's hourly fee, the reasonableness of the fees, and she averred that the total fees London incurred excluding the June 10, 2025 hearing was $4,441.50. She also submitted time entries which reflected the times she worked on London's case and the nature of the work that was performed.

[7] We address Robinson's enumerations of error in a different order than what she presented in her appellate brief.

The ability of a trial court to adjudicate claims under the UIFSA involves questions regarding a court's subject matter jurisdiction, *Serluco v. Taggart*, 357 Ga. App. 296, 296 (850 SE2d 483) (2020), and "[w]hether a trial court lacked subject matter jurisdiction is a question of law that we review de novo." *In re Estate of Taylor*, 377 Ga. App. 314, 314 (922 SE2d 476) (2025).

"The UIFSA was duly enacted by the General Assembly and is codified at sections 19-11-100 through 19-11-190 of the Georgia Code. The UIFSA was created to force uniformity in procedures and law with regard to intergovernmental establishment, enforcement, and modification of child support orders." *Ross v. Ross*, 302 Ga. 39, 42(1) (805 SE2d 7) (2017). The UIFSA "prohibits Georgia from modifying another state's child support order unless specific requirements are met divesting the foreign state of its continuing, exclusive jurisdiction." Id. Thus, "there are only a handful of circumstances in which a Georgia tribunal may modify another state's child support order[.]" Id. Those circumstances are:

(A) Neither the child, nor the obligee[8] who is an individual, nor the obligor[9] resides in the issuing state;

(B) A petitioner who is a nonresident of Georgia seeks modification; and

(C) The respondent is subject to the personal jurisdiction of the tribunal of Georgia; or

(2) This state is the residence of the child or a party who is an individual, is subject to the personal jurisdiction of the tribunal of Georgia, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.

OCGA § 19-11-170(a). A trial court may also modify another state's child support order "[i]f all of the parties who are individuals reside in Georgia and the child does not reside in the issuing state[.]" OCGA § 19-11-172(a). "If none of the above factual

---

[8] Pertinently, "obligee" means "[a]n individual to whom a duty of support is or is alleged to be owed or in whose favor a support order or a judgment determining parentage of a child has been issued[.]" OCGA § 19-11-101(16)(A).

[9] "Obligor" means, among other things, "an individual or the estate of a decedent that: … "[o]wes or is alleged to owe a duty of support;" or "[i]s liable under a support order[.]" OCGA § 19-11-101(17)(A), (C).

circumstances exist, *then a Georgia tribunal cannot modify a foreign state's child support order*." *Ross*, 302 Ga. at 43(1) (emphasis supplied).

Here, the record is clear, and Robinson does not dispute, that London resides in Maryland. Therefore, the requirements of OCGA § 19-11-172(a) were not satisfied to confer jurisdiction to modify the Maryland court's child support order. See OCGA § 19-11-172(a). Additionally, the requirements of OCGA § 19-11-170(a) were not satisfied because London, the obligor, resides in Maryland and did not file a consent in the Maryland tribunal for a Georgia tribunal to modify the child support order and assume continuing, exclusive jurisdiction. See OCGA § 19-11-170(a). Although Robinson contends that London has minimum contacts with Georgia to confer subject matter jurisdiction upon a court in this state, as stated above, a Georgia tribunal's subject matter jurisdiction under the UIFSA is limited to the conditions specified in OCGA §§ 19-11-170 and 19-11-172, and the failure to meet the conditions specified in those statutes deprives a Georgia court of subject matter jurisdiction.[10] Consequently, because London resides in Maryland and has not filed a consent in the Maryland

---

[10] Robinson's reliance on our prior decision in *Makin v. Davis*, 364 Ga. App. 16 (873 SE2d 477) (2022), is misplaced because that case did not concern the UIFSA or the construction of its provisions.

9

tribunal for a Georgia court to modify the child support order and assume jurisdiction, the trial court properly concluded that it lacked subject matter jurisdiction to modify the Maryland tribunal's child support order. See *Ross*, 302 Ga. at 43(1) (trial court lacked subject matter jurisdiction under the UIFSA over petition to modify Connecticut child support order because the husband was a resident of Connecticut and did not file written consent for the Georgia tribunal to modify the order and assume jurisdiction).

2. Second, in two related claims, Robinson argues that the trial court erred by determining that it lacked jurisdiction under the UCCJEA because she and the child have continuously resided in Georgia since October 2020, and the trial court failed to "initiate mandatory communication with the Maryland tribunal." Again, we disagree.

"We review de novo the question of subject matter jurisdiction under the UCCJEA." *Garay v. Garay*, 378 Ga. App. 194, 194 (924 SE2d 351) (2025).

"The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") was promulgated to address problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties when multiple states are

involved." *Roach v. Breeden*, 333 Ga. App. 839, 841 (777 SE2d 689) (2015). "Georgia adopted its version of the UCCJEA in 2001, which is codified at OCGA § 19-9-40 et seq." *Makin v. Davis*, 364 Ga. App. 16, 19 (873 SE2d 477) (2022). Under OCGA § 19-9-63,

> a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection (a) of Code Section 19-9-61 and:
>
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under Code Section 19-9-62 or that a court of this state would be a more convenient forum under Code Section 19-9-67; or
>
> (2) A court of this state or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.

In analyzing the provisions of this statute in relation to this case, we conclude that the trial court properly determined that it lacked subject matter jurisdiction. There is nothing in the record to show that a Maryland tribunal has determined that it no longer has exclusive, continuing jurisdiction under OCGA § 19-9-62 or that a Georgia tribunal would be a more convenient forum under OCGA § 19-9-67.

11

Additionally, jurisdiction could not be maintained under OCGA § 19-9-63(2) because, as stated above in Division 1, London resides in Maryland. Therefore, OCGA § 19-9-63 does not provide a basis for the trial court to exercise jurisdiction.

We also reject Robinson's claim that the trial court failed to initiate mandatory communication with the Maryland tribunal under OCGA § 19-9-64.

> Under OCGA § 19-9-64 (a), the trial court may exercise *emergency jurisdiction* when the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child or a sibling or parent of the child is subjected to or threatened with mistreatment or abuse. *Generally, to exercise jurisdiction under this statute, there must be an immediate danger of harm or abuse.*

*Bowman v. Bowman*, 345 Ga. App. 380, 382(1)(a) (811 SE2d 103) (2018) (emphasis supplied). The statute provides that

> [a] court of this state which has been asked to make a child custody determination under this Code section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under Code Sections 19-9-61 through 19-9-63, shall immediately communicate with the other court. A court of this state which is exercising jurisdiction pursuant to Code Sections 19-9-61 through 19-9-63, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a

court of another state under a statute similar to this Code section, *shall immediately communicate with the court of that state to resolve the emergency*, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.

OCGA § 19-9-64(d) (emphasis supplied).

Hence, by the plain terms of the statute, OCGA § 19-9-64 applies in cases of an emergency, i.e., an immediate danger of harm or abuse. *Bowman*, 345 Ga. App. at 382(1)(a). In such cases, a Georgia tribunal is required to communicate with the other state in which a custody proceeding had been commenced. OCGA § 19-9-64(d). Here, although Robinson alleged that London made threats against *her*, Robinson did not argue below, nor does she argue on appeal, that the child was in immediate danger of harm or abuse, and the trial court expressly stated in its order that there was no basis to exercise jurisdiction under OCGA § 19-9-64. Consequently, in the absence of any allegation that the child was in immediate danger of harm, OCGA § 19-9-64(d) did not apply, and thus the trial court was not required to communicate with the Maryland tribunal. See *Markle v. Dass*, 300 Ga. 702, 706 n.8 (797 SE2d 868) (2017) (rejecting the appellee's claim that OCGA § 19-9-64 applied where the trial court made no

findings of fact to warrant application of that statute and the appellee never alleged that the child was "subjected or threatened with mistreatment or abuse.").[11]

For all of these reasons, Robinson's claims that the trial court erred in its determination that it lacked subject matter jurisdiction under the UCCJEA fail.[12]

3. Next, Robinson argues that the trial court erred by awarding London attorney fees under OCGA § 9-15-14(a) and (b) without providing the requisite factual and statutory basis for the award. This claim, however, also fails.

> [T]his Court will affirm an award under subsection (a) of OCGA § 9-15-14 if there is any evidence to support it, while we review subsection

---

[11] Additionally, Robinson's claim that the trial court was required to analyze whether Georgia was the home state of the child as required by *Makin* is misguided. In *Makin*, the mother argued that the United Kingdom's family court lacked jurisdiction because it did not undertake any analysis as to the child's home state. *Makin*, 364 Ga. App. at 20(1). Thus, unlike the instant case, the issue in *Makin* was whether Georgia or the United Kingdom was the child's home state. Nevertheless, in response to the mother's claim that the trial court failed to analyze the child's home state, we stated that "the UCCJEA does not require that the court include [in] its order express factual findings as to the children's home state." Id. at 21(1). Thus, to the extent that Robinson argues that the trial was required to expressly analyze whether Georgia was the child's home state, this argument is a non-starter.

[12] To the extent that Robinson argues that the trial court erred by adopting the language of London's motion to dismiss "verbatim" in its order dismissing her petition, this argument is unavailing. It is well settled that a trial court's adoption of language proposed by a party is not an independent basis for reversing the trial court's order. *Pride Med., Inc. v. Doe*, 365 Ga. App. 679, 690(2)(d) (879 SE2d 845) (2022).

(b) awards for abuse of discretion. We review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them.

*Modi v. India-American Cultural Ass'n*, 370 Ga. App. 458, 464(3)(e) (897 SE2d 86) (2024) (citation modified).

As we have explained,

[a]n award of attorney fees is mandatory under OCGA § 9-15-14(a) when a party has asserted a claim with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim. OCGA § 9-15-14(b) permits, but does not require, the trial court to award attorney fees if it finds that an attorney or party brought or defended an action that lacked substantial justification or that the action was interposed for delay or harassment, or that an attorney or party unnecessarily expanded the proceeding by other improper conduct. The Code defines 'lacked substantial justification' as substantially frivolous, substantially groundless, or substantially vexatious.

*Modi*, 370 Ga. App. at 464–65(3)(e) (citation modified). "As we have held in cases involving OCGA § 9-15-14(a) or (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct." Id. at 465(3)(e). And

15

to permit meaningful appellate review of an award of fees and expenses, the trial court's order cannot be too vague and conclusory, such as where it fails to cite examples of conduct that authorize the award. The trial court need not cite specific testimony, argument of counsel, or any other specific factual reference in its order awarding fees under OCGA § 9-15-14; it is only required to specify the conduct upon which the award is made.

Id.

Here, in awarding attorney fees under OCGA § 9-15-14(a) and (b), the trial court stated the following in its order:

[T]he Court finds that the claims asserted in the Petitioner's [p]etition show such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claims. Additionally, the [c]ourt finds that the Petitioner's claims lacked substantial justification. The Petitioner's claims are wholly without merit and were initiated despite recent orders resolving the exact same matter. This [c]ourt was without jurisdiction under both the UCCJEA and the UIFSA. Additionally, there was no material change in circumstance, no change in the incomes of either party, no change in the child's needs, and no other allegations of changes which would impact the child's [well-being]. Petitioner's current pleadings simply reference and restate facts previously argued at trial in Maryland and acknowledged that these matters had already been presented to and ruled on by the [c]ourt in Maryland. This action appeared to be driven solely by Petitioner's

16

dissatisfaction with the outcome of a prior hearing, not by any legal basis or material change in the circumstance affecting the parties or the minor child. This [p]etition was solely an attempt to forum shop to obtain a different result than Petitioner obtained in Maryland. Such conduct unnecessarily expanded the proceedings between the Parties.

In light of the trial court's order, we conclude that the court did not abuse its discretion in awarding London attorney fees under OCGA § 9-15-14(a) and (b). We first note that the trial court held a hearing on June 10, 2025, and London's counsel submitted evidence in support of the request for attorney fees under OCGA § 9-15-14. Robinson, however, did not include a transcript of the hearing in the appellate record. Thus, to the extent that Robinson challenges her liability for attorney fees, we must presume that there was evidence to support the trial court's determination. See *Modi*, 370 Ga. App. at 465–66(3)(e) (affirming the trial court's judgment that an award of attorney fees under OCGA § 9-15-14 was appropriate where the transcript of the hearing on the fees was not included in the record on appeal).

Moreover, we reject Robinson's claim that the trial court failed to provide a statutory or factual basis for the attorney fees award. As shown above, in awarding attorney fees, the trial court's order stated that Robinson's petition showed a

complete absence of any justiciable issue of law or fact and lacked substantial justification because there was no material change in circumstances, and that based on Robinson's actions during the proceedings, it appeared that she merely sought to forum shop in an attempt to obtain a more favorable ruling on issues that were already ruled upon by the Maryland tribunal. Thus, contrary to Robinson's claim, the trial court linked its attorney fees award to the sanctionable conduct as required under OCGA § 9-15-14 and thus Robinson's claim that the trial court abused its discretion in awarding attorney fees necessarily fails. See *Cook v. Campbell-Cook*, 349 Ga. App. 325, 328 (1) (826 SE2d 155) (2019) (affirming attorney fees award under OCGA § 9-15-14, where the trial court made express findings of fact as to the statutory basis for the award).[13]

4. Finally, Robinson also argues that the trial court wrongly (a) determined that her petition was barred by res judicata; (b) disregarded evidence pertaining to her claim for contempt;[14] and (c) misapplied caselaw regarding finality and res judicata.

---

[13] To the extent that Robinson argues that the trial court erred by adopting verbatim the language in London's request for attorney fees, as stated above, under *Pride Med., Inc.*, Robinson is not entitled to reversal on this basis.

[14] As stated above, Robinson's claim for contempt was based on London's failure to comply with the Maryland court's orders.

In light of our holdings in Divisions 1 and 2 that the trial court lacked subject matter jurisdiction, it is unnecessary for us to address these claims of error.

Accordingly, for the foregoing reasons, we affirm the trial court's order dismissing Robinson's petition.

*Judgment affirmed. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*